513 A.2d 1144.

Keith A. Shepherd, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Housing Finance Agency, Respondent.

Submitted on briefs July 29, 1986, to President Judge CRUMLISH, JR., and Senior Judges ROGERS and KALISH, sitting as a panel of three.

*Edward L. Berger, Gordin & Berger, P.C.,* for petitioner.

*Trent Hargrove,* for respondent.

OPINION BY SENIOR JUDGE ROGERS, August 15, 1986:

The petitioner in this case, Keith A. Shepherd, seeks review of a final order of a hearing examiner upholding a decision of the Pennsylvania Housing Finance Agency (Agency) refusing the petitioner's application for the homeowner's emergency assistance provided by Article IV-C of the Housing Agency Law, Act of December 3, 1959, P.L. 1688, *as amended,* 35 P.S. §1680.101-1680.508 (the Act). Article IV-C was added to the Housing Agency Law by the Act of December 23, 1983, P.L. 383, *as amended,* 35 P.S. §§1680.401c-1680.410c.

Section 405c of the Act provides that if the Agency finds that an applicant mortgagor is eligible for home-

owner's assistance, the Agency shall "pay directly to each mortgagee secured by the mortgagor's real estate payments on behalf of the mortgagor." The amount to be paid is that which makes the mortgage current. The Agency will also pay the reasonable costs and attorneys fees already incurred. The same section provides that the Agency shall obtain a mortgage or other lien on the real property securing its payments on behalf of the mortgagor and that if the mortgagor shall default in his obligations to the Agency, the original mortgagee shall have leave to enforce its mortgage.

Section 404c of The Act is entitled Eligibility for Assistance and provides that no assistance may be made to a mortgagor unless, *inter alia,*

[a](5) The agency has determined that there is a reasonable prospect that the mortgagor will be able to resume full mortgage payments within thirty-six (36) months after the beginning of the period for which assistance payments are provided under this article and pay the mortgage or mortgages in full by its maturity date or by a later date agreed to by the mortgagee or mortgagees for completing mortgage payments.

The Agency decided there was not a reasonable prospect that the petitioner would be able to pay his mortgage as Section 404c(a)(5) requires; that the petitioner's financial condition was an "on-going situation which severely limits the probability of resumption of payments and payment of the mortgage by maturity." The hearing examiner, after hearing, agreed with the Agency's assessment.

The petitioner owns and resides in a dwelling at 1611 Ringgold Street, Philadelphia. The dwelling is encumbered by a mortgage which requires monthly payments of $169.00. On July 8, 1982, the petitioner was much delinquent in his payments and foreclosure

proceedings were commenced by the mortgagee. The petitioner's counsel, a participant in the Philadelphia Volunteer Lawyers Action Program who commendably provides his able services without charge, assisted the petitioner in filing a Chapter 13 Bankruptcy Petition in August 1982. The bankruptcy court approved a plan which required the petitioner to resume his full mortgage payments outside the plan and to liquidate a portion of the delinquency on the mortgage by monthly payments of $16.10 for forty-six months. The foreclosure was stayed meanwhile. Unfortunately, the petitioner did not comply with the requirements of the plan and in the summer of 1985 the bankruptcy court lifted the stay of foreclosure. The mortgagee then commenced new foreclosure proceedings. On November 8, 1985, the petitioner applied for assistance from the Agency, which as we have said, rejected his application. Various delays not necessary to describe then occurred. On May 1, 1986 a hearing examiner conducted a hearing, at which the petitioner was represented by his volunteer counsel. The testimony of the petitioner and documents in the record disclose the following history.

As for the petitioner's employment record, we learn that he worked for the U.S. Postal Service for eighteen years. He testified to having been injured in 1976 and lost time from work in the years following and that in 1985 he was injured again and lost time from work but received no workmen's compensation. In January 1986 he was discharged by the U.S. Postal Service because "I had some legal conflict as far as the mail process was concerned. It was a legal process taken so therefore believed [sic] that I lost my position." He was unemployed at the time of the hearing but looking for work and testified that he had a prospect for employment.

The petitioner also testified that his income during the last four or five years—which includes the years

during which the foreclosure was stayed by the bankruptcy court and he was subject to, but defaulted on, a plan requiring him to make the $169.00 monthly payments and $16.10 a month on the delinquency—was "in the range of 22-23 thousand dollars."

The petitioner's personal circumstances are that he is the father of three children but separated from them and their mother. He is subject to a $300 per month support order but testified that he may soon be relieved of this obligation because the children are, or are near, eighteen years old. He lives with his fiancee and their young child at the Ringgold Street property. The petitioner testified that his fiancee is employed and would contribute to the living expenses.

Reports filed by the mortgagee's agent show that as of about the time of the hearing the current unpaid principal of the originally $9,200 mortgage was $4,112 and the arrearages in principal and interest as the result of defaults in installment payments were $3,494 making a total arrearage of more than $7,600.00

These circumstances—the failure of the petitioner to comply with the bankruptcy plan when he was employed; his condition of unemployment at the time this matter was decided;[1] the petitioner's family obligations; and the size of the current delinquency—support the Agency's determination that there was not a reasonable prospect that the mortgagor would be able to resume full mortgage payments within thirty-six months and pay the mortgage in full by its maturity date or by a later date agreed to by the mortgagee.

Order affirmed.

### ORDER

AND NOW, this 15th day of August, 1986, the order of the Pennsylvania Housing Finance Agency in the above-captioned matter is affirmed.

---

[1] The petitioner's counsel reports in his brief filed here that the petitioner as of that writing had obtained full-time employment.